IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN PROKOP, | ) CASE NO. 1:22-CV-02153-DCN |
| Plaintiff, | ) |
| vs. | ) JUDGE DONALD C. NUGENT |
| CROSSCOUNTRY MORTGAGE, LLC, | ) MAGISTRATE JUDGE |
| | ) JONATHAN D. GREENBERG |
| Defendant. | ) **REPORT & RECOMMENDATION** |

This case is before the Court upon referral for general pretrial supervision. (Doc. No. 8.) Currently pending is Plaintiff's Motion for a Court Ordered Cease and Desist (Doc. No. 5), Motion for Summary Judgment (Doc. No. 6), and Motion to Remand (Doc. No. 7). Also pending is Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. No. 25.)

For the following reasons, it is recommended that Defendant's Motion to Dismiss (Doc. No. 25) be GRANTED, and Plaintiff's pending motions (Doc. Nos. 5-7) be DENIED AS MOOT.

**I. Procedural Background**

On November 30, 2022, Defendant removed this case to federal court. (Doc. No. 1.) On December 7, 2022, Defendant filed a Motion to Dismiss the complaint. (Doc. No. 4.) On December 8, 2022, Plaintiff, proceeding *pro se*, filed a Motion for a Court Ordered Cease and Desist (Doc. No. 5), Motion for Summary Judgment (Doc. No. 6), and Motion to Remand (Doc. No. 7). On December 19, 2022, Plaintiff filed a Motion to Amend Complaint. (Doc. No. 9.) On January 5, 2023, the Court granted Plaintiff's motion to amend his complaint. (Doc. No. 18.)

On January 19, 2023, Defendant filed a Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. No. 25.) Plaintiff filed a Brief in Opposition to the motion on January 26, 2023. (Doc. No. 26.) On February 9, 2023, Defendant filed its Reply in support of its Motion to Dismiss. (Doc. No. 27.)

## II. Factual Allegations

The Amended Complaint (Doc. No. 19) contains the following factual allegations.

Plaintiff has a mortgage with Defendant. (*Id.* at 1.) Plaintiff asserts it came to his attention "that there is reason to believe that the alleged lender (defendant) is not the holder in due coarse [sic] of the borrowers [sic] promissory note and/or may have breached the agreement concerning the above referenced, [sic] alleged loan or loan of credit." (*Id.* at 1, 3.) Since Plaintiff "paid money in the form of a promissory note to the lender to perform according to the loan agreement," Plaintiff requested Adequate Assurance of Due Performance pursuant to UCC 2-609 and the FDCPA, which Defendant received on September 12, 2022, and October 14, 2022. (*Id.* at 3.) Defendant "failed and refused to respond pursuant to UCC 2-609 and 15 U.S.C. 1692," and Plaintiff stopped paying on the mortgage. (*Id.*) Plaintiff asserts that because Defendant never responded to the Adequate Assurance of Due Performance/Validation withing 30 days as required by law, the alleged agreement was ended. (*Id.*) Defendant "was a company engaged in the business of banking and interstate commerce and entering into contracts with consumers." (*Id.*) In addition, Defendant "regularly lends alleged loans and attempts to enforce obligations against debts." (*Id.*) Therefore, Defendant must abide by the UCC and the FDCPA. (*Id.*)

Plaintiff asserts that Defendant is not the holder in due course of the alleged promissory note under UCC 3-302, "and that the loan agreement was stolen and forged, thus ending any claim the defendant has against the Plaintiff." (*Id.*) Defendant continued to collect on the debt without providing Adequate Assurance of Due Performance/Validation even after receiving Plaintiff's notice and demand. (*Id.*)

2

Defendant continued to send statements and letters demanding payment, made telephone calls demanding payment, and made negative reports on Plaintiff's credit report, all in violation of the FDCPA. (*Id.* at 5.) Plaintiff claims to have suffered damages to the extent of the original amount of the alleged debt. (*Id.*)

Plaintiff also asserts that Defendant did not follow generally accepted accounting principles. (*Id.* at 3.)

### III. Motion to Dismiss

**A.     Standard of Review**

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555–556, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

3

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly*, 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

With respect to pleadings filed by *pro se* plaintiffs, while such pleadings are "'liberally construed' and held to less stringent standards than formal pleadings drafted by lawyers, pro se plaintiffs must still meet basic pleading requirements, and courts are not required to conjure allegations on their behalf." *Stansell v. Grafton Corr. Inst.*, Case No. 1:17-cv-1892, 2019 WL 6609676, at *2 (N.D. Ohio Dec. 5, 2019) (citing and quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (citing *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).

**B.     FDCPA Claims**

Defendant asserts that the factual allegations in the Amended Complaint "establish CCM as a Mortgage Company servicing a loan that it originated and, therefore, the FDCPA does not apply." (Doc. No. 25 at 6.) Defendant argues that "Plaintiff's failure to allege facts sufficient for the Court to find that CCM is a 'debt collector,' is fatal to Plaintiff's Amended Complaint." (*Id.* at 6-7.) According to Defendant, "even assuming the truth of the allegations in Plaintiff's Amended Complaint, the FDCPA does not apply to CCM," and the Amended Complaint should be dismissed with prejudice. (*Id.* at 9.)

In response, Plaintiff argues no one is above the law, and Rule 8 does not require plaintiffs "to plead facts tending to rebut all possible lawful explanations for a defendant's conduct." (Doc. No. 26 at 1) (citations omitted). Plaintiff asserts that if CCM is the original lender, then it is in violation of federal reserve policies and procedures and generally accepted accounting principles; if CCM is not the originator, then it "absolutely without question" falls under the definition of "debt collector" under the FDCPA. (*Id.* at 6.) Plaintiff maintains that because "CCM regularly lends alleged loans and attempts to enforce obligations against alleged debts," CCM is therefore a debt collector. (*Id.*) Plaintiff believes he has "evidence that the terms and conditions of the alleged agreement are concealed, the promissory note was stolen, forged, and/or altered." (*Id.* at 6-7.)

"The basic elements of a FDCPA claim are as follows: (1) plaintiff was a 'consumer' as defined by the statute; (2) the debt arose out of transactions which are 'primarily for personal, family or household purposes"; (3) defendant was a 'debt collector' as defined by the statute; and (4) defendant violated the prohibition(s) set forth in the FDCPA." *Johnson v. Trueaccord Corp.*, Case No. 1:21-cv-629, 2022 WL 16923889, at *5 (N.D. Ohio Nov. 14, 2022) (citing *Wallace v. Washington Mut. Bank*, 683 F.3d 323, 326 (6th Cir. 2012); *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1100 (6th Cir. 2015); *Valhalla Inv. Prop., LLC v. 502, LLC*, 456 F. Supp. 3d 939, 945 (M.D. Tenn.), *aff'd*, 832 F. App'x 413 (6th Cir. 2020)).

As this Court has previously explained:

> In enacting the FDCPA, Congress intended to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).
>
> "Debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term does ***not*** include: "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." *Id.*

> A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).
>
> Lastly, a "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed ..." 15 U.S.C. § 1692a(4). "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors ..." *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir.2003) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985) (internal quotation marks and citation omitted.)); *see MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir.2007) (finding it "well-settled" that creditors are not "debt collectors" for purposes of the FDCPA); see Lewis v. ACB Business Servs. Inc., 135 F.3d 389, 411 (6th Cir.1998) (holding that creditors will not be deemed "debt collectors" unless the creditors or their employees collect the debts of third parties or attempt to collect their own debts under assumed names); *see also Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir.1996) (quoting Perry with approval).

*Berry v. Sugarman*, No. 1:09CV699, 2010 WL 1032643, at *3 (N.D. Ohio Mar. 17, 2010) (emphasis in original.) "Liability for violations of the FDCPA can only attach to those who meet the statutory definition of a 'debt collector.'" *Adelson v. Ocwen Loan Servicing, LLC*, Case No. 2:19-cv-13569-TGB-DRG, 2020 WL 6580628, at *10 (E.D. Mich. Nov. 10, 2020). In addition, "the Sixth Circuit has determined that Congress did not intend for the statutory definition of debt collector to cover 'mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing[.]'" *Id.* (quoting *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355 (6th Cir. 2012) (additional citation omitted). In addressing the question of who qualifies as a "debt collector" under the FDCPA, the Supreme Court explained:

> In doing so, we begin, as we must, with a careful examination of the statutory text. And there we find it hard to disagree with the Fourth Circuit's interpretive handiwork. After all, the Act defines debt collectors to include those who regularly seek to collect debts "owed ... another." And by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself. Neither does this language appear to suggest that we should care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase. All that

> matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for "another." And given that, it would seem a debt purchaser like Santander may indeed collect debts for its own account without triggering the statutory definition in dispute, just as the Fourth Circuit explained.

*Henson v. Santander Consumer USA Inc.*, 198 L.Ed.2d 177, 137 S.Ct. 1718, 1721–22 (2017).

Plaintiff admits he has a mortgage with Defendant. (Doc. No. 19 at 1.) As Defendant states, "while Plaintiff asserts 'there is reason to believe' CCM may not 'be a holder in due coarse [sic]' or that CCM 'may have breached the agreement,' Plaintiff provides no facts to substantiate these erroneous claims, nor does Plaintiff assert a cause of action based on his alleged 'beliefs.'" (Doc. No. 25 at 9.) Such conclusory allegations are insufficient to state a cognizable claim for relief. *Wilson v. Hofbauer*, 113 F. App'x 651, 653 (6th Cir. 2004) ("Generally, wholly conclusory allegations are insufficient to state a cognizable claim for relief.") (citation omitted). Furthermore, whether Defendant was the original lender or not, so long as Defendant is the debt owner collecting the debt for itself, as all submitted evidence suggests it is,[1] under *Henson*, Defendant falls outside the definition of "debt collector" under the FDCPA.

For all these reasons, the undersigned recommends Plaintiff's FDCPA claims be dismissed with prejudice.

**C.  UCC Claims**

Defendant argues that Plaintiff's reliance on Article 2 of the UCC s "equally untenable," as Article 2 governs the sale of goods and not real property. (Doc. No. 25 at 10.) Citing cases from the Eastern District of Michigan, Defendant asserts that the UCC is inapplicable to a mortgage on real property as it is not a negotiable instrument. (*Id.*)

---

[1] "In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to the plaintiff's claims, (2) matters of which a court may properly take notice, and (3) public documents." *Cotter v. GMAC Mortg., LLC*, Case No. 12-15382, 2013 WL 3979371, at *1 n.1 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001)). Consideration of such documents does not require converting the motion to one for summary judgment. *Id.* (citing *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999)).

7

Plaintiff responds that the UCC "most certainly applies to the promissory note which is in question and **a negotiable instrument**." (Doc. No. 26 at 4) (emphasis in original). Plaintiff disagrees with Defendant as to the applicability of Article 2 to real property. (*Id.* at 4-6.)

With respect to Article 2, that section of the UCC governs the sale of goods and not realty. *See* O.R.C. §§ 1302.01, 1302.03. *See also Smith v. Nationstar Mortg., LLC*, No. 09-14572, 2010 WL 4539520, at *2 (E.D. Mich. Nov. 3, 2010); *March v. Fed'l Nat'l Mortg. Ass'n*, Case No. 08-cv-12138, 2009 WL 10682435, at *3 (E.D. Mich. Mar. 31, 2009).[2] Therefore, Article 2 is inapplicable to Plaintiff's claims.

With respect to Article 3, unlike Michigan, the Supreme Court of Ohio has held that mortgages are "negotiable instruments" subject to Article 3.[3] *See, e.g., PNC Bank, Nat'l Ass'n v. Pataskala Town Center, LLC*, Case No. 2:15-cv-1038, 2016 WL 7049249, at *4 (S.D. Ohio Dec. 5, 2016) ("The Ohio Supreme Court has held that while promissory notes and mortgages are 'negotiable instruments,' separate guarantee agreements are not.") (citing *Buckeye Fed'l Savings & Loan Ass'n v. Gurlinger*, 62 Ohio St.3d 312, 315 (1991)), *judgment aff'd and remanded for add'l fact-finding*, 2017 WL 6812267 (6th Cir. Dec. 21, 2017). *See also Nationstar Mortg. LLC v. Cruse*, Case No. 2:14-cv-383, 2015 WL 5174640, at *4 (S.D. Ohio Sept. 4, 2015) ("Ohio's version of the UCC governs who may enforce a negotiable note. Article 3 of the UCC governs the creation, transfer, and enforceability of negotiable instruments, including promissory notes secured by mortgages on real estate.") (quoting *Deutsche Bank Nat'l Trust Co. v. Najar*, 2013-Ohio-1657, 2013 WL 1791372 (Ohio Ct. App. Apr. 25, 2013)). While Plaintiff alleges Defendant "is not the holder in due coarse [sic] (UCC 3-302) of the alleged promissory note and that the loan

---

[2] The provisions of Michigan law regarding Article 2 of the UCC cited by these cases are materially similar to the provisions of Ohio law. *Cf.* MCL §§ 440.2102, 440.2105 and O.R.C. §§ 1302.01, 1302.02.

[3] Defendant addresses Plaintiff's UCC Article 3 claim in a single sentence: "'The UCC is inapplicable to a mortgage on real property because it is not a negotiable instrument,'" citing cases from the Eastern District of Michigan in support, without addressing or acknowledging that under Ohio law, mortgages do fall within the purview of Article 3. (Doc. No. 25 at 10; Doc. No. 27.)

agreement was stolen and forged," he alleges no facts to substantiate his claims. (Doc. No. 19.) Again, such conclusory allegations are insufficient to state a cognizable claim for relief. *Wilson*, 113 F. App'x at 653.

For all these reasons, the undersigned recommends Plaintiff's FDCPA claims be dismissed with prejudice.

## V. Conclusion

For all the reasons set forth above, it is recommended that Defendant's Motion to Dismiss (Doc. No. 25) be GRANTED, and Plaintiff's pending motions (Doc. Nos. 5-7) be DENIED AS MOOT.

Date: February 14, 2023

    *s/ Jonathan Greenberg*
    Jonathan D. Greenberg
    United States Magistrate Judge

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**